The relief described hereinbelow is SO ORDERED.

SIGNED this 29th day of August, 2016.



_____
Robert D. Berger
United States Bankruptcy Judge
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

**International Electric, Inc.,**                                                                 Case No. 15-20388
      Debtor.                                                                        Chapter 11

**International Electric, Inc.,**
**United States of American,**
*ex rel.* **International Electric, Inc.,**
      Plaintiffs,

      v.                                                                             Adversary No. 15-6063

**Anthony & Gordon Construction Co., Inc.,**
**Great American Insurance Company,**
      Defendants.

**MEMORANDUM OPINION AND ORDER TRANSFERRING ADVERSARY
PROCEEDING TO THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA**

Plaintiff-Debtor International Electric, Inc., commenced this adversary proceeding

against Anthony & Gordon Construction Co., Inc., and Great American Insurance Company for

breach of contract and recovery of money for services rendered.[1]  The parties appear by counsel.[2]

## JURISDICTION

This Court has jurisdiction over the parties pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b) and the Amended Standing Order of Reference of the United States District Court for the District of Kansas that exercised authority conferred by 28 U.S.C. § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013.[3]  The parties object to venue and jurisdiction.

## BACKGROUND

In 2011, Anthony & Gordon Construction Co., Inc. (A&G), an industrial building construction company incorporated in Oak Ridge, Tennessee,[4] won a federal building contract to build an Army Reserve Center in Roanoke, Virginia (the Project).  Great American Insurance Company (GAIC), acting as surety on the Project, executed and delivered a payment bond to the United States on November 28, 2011[5]—as required under the Miller Act.[6]  On April 5, 2012, International Electric, Inc. (Plaintiff-Debtor), an electrical contractor incorporated in Shawnee, Kansas, entered into a subcontractor agreement with A&G for services at the Project.[7]  On

---

[1] Doc. 1. Unless otherwise noted, references to Doc. numbers are to pleadings filed in the instant adversary proceeding. All future statutory references are to the Bankruptcy Code (Code), as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), 11 U.S.C. §§ 101–1532, unless otherwise specifically noted.
[2] Plaintiffs, International Electric Inc., United States of America, For The Use of International Electric, Inc., appear by their attorney, Colin N. Gotham, Shawnee, KS. Defendant, Anthony & Gordon Construction Co., Inc., appears by its attorneys, Caroline A. Bader and Megan J. Redmond, Overland Park, KS. Defendant, Great American Insurance Company, appears by its attorney, Michael M. Tamburini, Kansas City, MO.
[3] D. Kan. Standing Order No. 13-1, *printed in* D. Kan. Rules of Practice and Procedure at 168 (March 2016).
[4] Doc. 16-2, at 2 ¶ 3.
[5] Doc. 1, at 4 ¶ 6.
[6] 40 U.S.C. § 3131 et seq. The Miller Act requires that prime contractors for the construction, alteration, or repair of Federal buildings furnish a payment bond for contracts in excess of $100,000. The payment bond is required as security for the protection of those supplying labor or materials in the construction of public buildings.
[7] Doc. 1, at 4 ¶ 7.

16.08.29 15-6063 International Electric Order Transferring AP  2

October 14, 2013, Plaintiff-Debtor informed GAIC that A&G was in default, alleging Plaintiff-Debtor completed 84.4 percent of the work, while only being paid 48.9 percent of the contract price.[8]

On March 4, 2015, Plaintiff-Debtor filed for Chapter 11 relief[9] and listed $191,367.46 in accounts receivable from A&G.[10] On May 19, 2015, Plaintiff-Debtor sent a demand letter to A&G requesting A&G pay $191,367.46.[11] On July 7, 2015, Plaintiff-Debtor filed a three-count complaint against A&G and GAIC, alleging: (Count I) breach of contract; (Count II) unjust enrichment; and (Count III) recovery upon payment bond pursuant to the Miller Act.[12]

On August 7, 2015, GAIC filed an answer denying the majority of Plaintiff-Debtor's allegations.[13] However, GAIC admitted that this Court has jurisdiction and venue is proper under the Miller Act.[14] Twenty-four days later, on August 31, 2015, GAIC filed an amended answer denying that this Court has jurisdiction and denying that venue is proper under the Miller Act.[15] Plaintiff-Debtor asserts GAIC's amended answer was untimely under Fed. R. Civ. P. 15.[16]

On September 8, 2015, A&G Filed a motion to dismiss under Fed. R. Civ. P. 12(b)[17] asserting that this Court: (1) lacks authority to enter judgment under Article III of the United States Constitution; (2) lacks personal jurisdiction over A&G; (3) is the improper venue under

---

[8] Doc. 1-4, at 4.
[9] Doc. 1. Case No. 15-20388.
[10] *Id*. at 21.
[11] Doc. 1-5.
[12] Doc. 1.
[13] Doc. 8.
[14] *Id*. at 2 ¶ 8 ("GAIC admits the allegations contained in paragraph 4 of Debtor's Complaint (Count III)"). Paragraph 4 of Count III of Plaintiff-Debtor's complaint states that "[t]his action arises, and the court has jurisdiction, under the Miller Act, United States Code Annotated, Title 40, Sections 3131 to 3134 (40 U.S.C.A. §§ 3131 to 3134). Venue is proper in this district." Doc. 1, at 3 ¶ 4.
[15] Doc. 11, at 2 ¶ 8 ("GAIC denies the allegations contained in paragraph 4 of [Plaintiff-Debtor's] Complaint (Count III).").
[16] FED. R. CIV. P. 15 is applicable to adversary proceedings pursuant to FED. R. BANKR. P. 7015.
[17] FED. R. CIV. P. 12 is applicable to adversary proceedings pursuant to FED. R. BANKR. P. 7012(b).

the Miller Act and 28 U.S.C. § 1409(c); and (4) may not enter final judgment because the instant action is a non-core proceeding and A&G does not consent to entry of a final judgment.[18] On September 11, 2015, GAIC joined A&G's motion to dismiss, incorporating: (1) lack of Constitutional authority under Article III; (2) lack of personal jurisdiction; and (3) improper venue.[19] Additionally, GAIC raised the Miller Act's one-year statute of limitations as an affirmative defense.[20] On September 28, 2015, Plaintiff-Debtor responded to A&G and GAIC, conceding that this Court lacks Constitutional authority under Article III.[21] However, Plaintiff-Debtor submits that this Court "may still hear this case and submit its proposed findings of fact and conclusions of law to the district court for *de novo* review of any finding or conclusion to which the parties may object."[22] Plaintiff-Debtor further contends that this Court has personal jurisdiction "by virtue of the Miller Act's nationwide service provision and the district court's common-law pendent personal jurisdiction."[23] Plaintiff-Debtor asserts its contract with A&G contains a valid forum selection clause that supersedes the Miller Act's venue provision.[24] That clause states that "Litigation Action may be filed in the appropriate state or federal court."[25] A&G argues that the forum selection clause is invalid because it is vague and does not identify the forum selected.[26] Additionally, Plaintiff-Debtor believes that GAIC "which ultimately would bear the payment obligation . . . consented to and has waived objections to venue in this Court as stated in its Answer filed August 7, 2015."[27]

---

[18] Doc. 16.
[19] Doc. 19.
[20] *Id*. at 2. *See* 40 U.S.C. § 3133(b)(4) ("An action . . . must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person brining the action.").
[21] Doc. 20, at 2.
[22] *Id*.
[23] *Id*. at 2–3.
[24] *Id*. at 4–6.
[25] Doc. 16-2, at 14 ¶ 9.9.
[26] Doc. 22, at 2.
[27] Doc. 20, at 5.

On January 12, 2016, GAIC filed a motion for summary judgment asserting that "no genuine issue of material fact exists to preclude entry of summary judgment in favor of GAIC . . . ."[28] GAIC's memorandum in support of its motion for summary judgment alleges Counts I and II are solely against A&G and not GAIC.[29] On Count III, GAIC requests judgment that Plaintiff-Debtor failed to file their complaint within the Miller Act's one-year statute of limitations.[30] Plaintiff-Debtor filed a response on February 22, 2016, withdrawing Counts I and II as to GAIC.[31] On Count III, Plaintiff-Debtor asserts § 108 applies to a debtor-in-possession as well as a Chapter 11 trustee and moved for partial summary judgment against GAIC on Count III.[32]

Originally, A&G argued that the Court lacks authority to transfer the adversary proceeding to the Western District of Virginia under 28 U.S.C. § 1406.[33] GAIC agreed with this assertion by joining in A&G's motion to dismiss.[34] During oral arguments on May 24, 2016, A&G and GAIC conceded that the adversary proceeding could be transferred to the United States District Court for the Western District of Virginia if the Court were not inclined to dismiss the proceedings. Furthermore, all parties admitted that bifurcation of Counts I, II, and III amongst various courts in separate jurisdictions is not feasible.

---

[28] Doc. 26.
[29] Doc. 27, at 2 ¶ 3.
[30] *Id*. at 4–5. *See* 40 U.S.C. § 3133(b)(4).
[31] Doc. 29, at 2 ¶ 2.
[32] *Id*. at 3–6.
[33] Doc. 16-1, at 8.
[34] Doc. 19.

## ANALYSIS

### I. GAIC's Amended Answer Is Untimely

GAIC filed its initial answer[35] on August 7, 2015, and an amended answer[36] three days late on August 31, 2015. Under Fed. R. Civ. P. 15(a), a party may amend an answer without leave within 21 days after serving it, or with the opposing party's consent or the Court's leave. Here, GAIC's amended answer is untimely because: (a) the 21-day deadline expired on August 28, 2015—three days before GAIC filed its amended answer; (b) GAIC did not have Plaintiff-Debtor's written consent to amend; and (c) GAIC did not request the Court's leave to file an amended answer. Thus, the Court will not consider GAIC's amended answer—specifically, GAIC's denial of jurisdiction and venue.[37]

### II. Personal Jurisdiction

Bankruptcy courts have nationwide personal jurisdiction because Bankruptcy Rule 7004(d) provides for nationwide service of process.[38] Though Bankruptcy Rule 7004 is procedural, it has been interpreted to provide bankruptcy courts with nationwide personal jurisdiction over adversary proceedings.[39] When "Congress has provided for nationwide service of process, courts should presume that nationwide personal jurisdiction is necessary to further congressional objectives."[40] Thus, when determining whether this Court has personal jurisdiction over A&G and GAIC, it is not whether they have minimum contacts with Kansas;

---

[35] Doc. 8.
[36] Doc. 11. The Certificate of Service indicates that "the foregoing was served by electronic service upon the parties receiving electronic notice in these proceedings, on the 28th day of August, 2015." However, the Court's Notice of Electronic filing indicates Doc. 11 was "entered on 8/31/2015 at 2:57 PM CDT and filed on 8/31/2015."
[37] Importantly, A&G objects to both venue and jurisdiction. *See* Doc. 16.
[38] The summons and complaint and all other process except a subpoena may be served anywhere in the United States.
[39] *See* Am. Freight Sys., Inc. v. Temperature Sys., Inc. et al. (*In re* Am. Freight Sys., Inc.), 173 B.R. 739, 741–42 (Bankr. D. Kan. 1994) (affirming that "minimum contacts with the United States are all that is required when federal law authorizes nationwide service of process, as Federal Rule of Bankruptcy Procedure 7004(d) does in adversary proceedings (except subpoenas).").
[40] Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 948 (11th Cir. 1997).

rather, it is whether they have minimum contacts with the United States.[41] A&G admits it is a Tennessee corporation and engaged in work on the Project in Virginia.[42] GAIC has a business address in Cincinnati, Ohio, and "admits that it provided Miller Act Bonds"[43] on the Project. Further, there are no assertions that either A&G or GAIC lack the necessary minimum contacts with the United States. Thus, this Court has personal jurisdiction over A&G and GAIC pursuant to Bankruptcy Rule 7004(d).

### III. The Court Lacks Authority To Enter A Final Judgment Under Article III

A&G and GAIC allege this Court lacks authority to enter a final judgment on: (Count I) breach of contract; (Count II) unjust enrichment; and (Count III) recovery upon payment bond pursuant to the Miller Act because they are non-core proceedings.[44] A&G cites *Stern v. Marshall*[45] and *Northern Pipeline Construction Co. v. Marathon Pipeline*[46] for the proposition that only judges appointed under Article III of the United States Constitution may adjudicate non-core state-law claims. Non-core claims are those that do not arise under the Code—even if the issues relate to the bankruptcy. When presented with a non-core claim "the bankruptcy court is statutorily but not constitutionally authorized to" adjudicate.[47] Additionally, 28 U.S.C. § 157(c)(2) only allows adjudication of non-core claims when parties consent. Because A&G has not consented,[48] the Court could submit proposed findings of fact and conclusions of law to the United States District Court for the District of Kansas (the Kansas District Court) for *de novo* review pursuant to 28 U.S.C. § 157(c)(1). Plaintiff-Debtor does "not quarrel with A&G's

---

[41] Donald G. Atteberry, DVM, P.A. v. Barclays Bank PLC (*In re* Donald G. Atteberry, DVM, P.A.), 159 B.R. 1, 5 (D. Kan. 1993) (finding that when Bankruptcy Rule 7004(d) applies, the focus is "on the defendant's contacts with the United States rather than Kansas.").
[42] Doc. 16-1, at 3.
[43] Doc. 1-6, at 2; Doc. 8, at 3 ¶ 10.
[44] Doc. 16-1, at 4. GAIC joined A&G's Motion to Dismiss. Doc. 19, at 1.
[45] 564 U.S. 462 (2011).
[46] 458 U.S. 50 (1982).
[47] Loveridge v. Hall et al. (*In re* Renewable Energy Dev. Corp.), 792 F.3d 1274, 1282 (10th Cir. 2015), *as amended on denial of reh'g* (July 28, 2015).
[48] Doc. 16-1, at 5.

portrayal of its claims in the instant action as non-core, nor . . . disagree with its analysis under *Stern* and *Northern Pipeline Construction Co.* that the Court lacks the ability to enter final judgment absent the parties' consent."[49]

Here, Plaintiff-Debtor's assertions against A&G and GAIC for breach of contract, unjust enrichment, and for recovery upon a payment bond under the Miller Act are all non-core claims under 28 U.S.C. § 157. Thus, the Court lacks authority to enter a final judgment under Article III of the United States Constitution. Generally, when this Court lacks Constitutional authority to enter a final judgment it would submit proposed findings of facts and conclusions of law to the Kansas District Court to enter a final judgment. When a bankruptcy court is presented with a non-core claim, "the proper course is to issue proposed findings of fact and conclusions of law. The district court will then review the claim *de novo* and enter judgment."[50] However, A&G and GAIC allege that the Kansas District Court does not have personal jurisdiction.[51] To determine whether the Kansas District Court has personal jurisdiction over A&G and GAIC on Counts I, II, and III, "the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process."[52] Here, the adversary proceeding was commenced pursuant to Bankruptcy Rule 7001–7087 and nationwide service of process is provided for by Bankruptcy Rule 7004(d). Thus, under 28 U.S.C. § 157(a) the Kansas District Court has personal jurisdiction over Counts I and II. Additionally, this Court has personal jurisdiction over Count III because the Miller Act provides for nationwide service of process under 40 U.S.C.

---

[49] Doc. 20, at 2 (citations omitted).
[50] Exec. Benefits Ins. Agency v. Arkison, 134 S. Ct. 2165, 2170 (2014).
[51] Doc. 16-1, at 2; Doc. 19.
[52] Niemi v. Lasshofer, 770 F.3d 1331, 1348 (10th Cir. 2014) (*citing* Trujillo v. Williams, 465 F.3d 1210, 1217 (10th Cir. 2006)).

§ 3133(b)(3)(B).[53]  However, this Court does not have venue over Count III because it is governed by the Miller Act's mandatory venue provision requiring transfer of Count III to the United States District Court for the Western District of Virginia.

### IV. Proper Venue Is In The Western District of Virginia

A&G and GAIC maintain that venue is proper in the United States District Court for the Western District of Virginia.  Venue of an adversary proceedings is governed by 28 U.S.C. § 1409(a) which provides, in pertinent part that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such [bankruptcy] case is pending."  Thus, as a general rule, the district court in which the bankruptcy case is pending is the proper venue.  However, the Miller Act contains competing language stating that "[a] civil action brought under [the Miller Act] . . . *must* be brought . . . in the United States District Court for any district in which the contract was to be performed and executed, regardless of the amount in controversy."[54]  This presents an issue of statutory competition.  When two statutes conflict, courts are to construe them harmoniously and give each effect.[55]  The "task is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive."[56]

It is a well established "statutory construction that the specific governs the general."[57] This canon of construction provides that if two statutes conflict, the more specific statute

---

[53] *See also* Limerick v. T.F. Scholes, Inc., 292 F.2d 195, 196 (10th Cir. 1961) ("The Miller Act provides that every suit instituted thereunder shall be brought in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere." (citation omitted) (internal quotation marks omitted)).
[54] 40 U.S.C. § 3133 (emphasis added).
[55] Morton v. Mancari, 417 U.S. 535, 551 (1974).
[56] Negonsott v. Samuels, 507 U.S. 99, 104 (1993) (*quoting* Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 570 (1982)).
[57] Morales v. Trans World Airlines, Inc., 504 U.S. 374, 384 (1992). *See also* Morton v. Mancari, 417 U.S. at 550–51 ("a specific statute will not be controlled or nullified by a general one").

controls.[58] In this instance, the Miller Act is more specific than the Code. The Supreme Court has described the purpose of the Miller Act as follows:

> The Miller Act represents a congressional effort to protect persons supplying labor and material for the construction of federal public buildings in lieu of the protection they might receive under state statutes with respect to the construction of nonfederal buildings. The essence of its policy is to provide a surety who, by force of the Act, must make good the obligations of a defaulting contractor to his suppliers of labor and material.[59]

"[T]he Miller Act was designed to provide an alternative remedy to the mechanics' liens ordinarily available on private construction projects."[60] The venue provision of 40 U.S.C. § 3131(b)(3)(B) is construed as a venue requirement and not a limitation on jurisdiction.[61] Additionally, "[t]he Miller Act . . . is highly remedial in nature. It is entitled to a liberal construction and application in order [to] properly [] effectuate the Congressional intent to protect those whose labor and materials go into public projects."[62] Thus, the Court concludes that the specific language of the Miller Act controls over the general language of 28 U.S.C. § 1409(a) applicable to all claims under Title 11. It is uncontroverted that the Project was located in Roanoke, Virginia. Therefore, under 40 U.S.C. § 3133(b)(3), the sole permissible venue is the United States District Court for the Western District of Virginia.

V.     The Alleged Forum Selection Clause Is Invalid

While 40 U.S.C. § 3133(b)(3) sets venue in the United States District Court for the Western District of Virginia, case law establishes that the statutory venue requirement may be

---

[58] Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445 (1987) ("where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one") (*quoting* Radzanower v. Touche Ross & Co., 426 U.S. 148, 153 (1976)).
[59] United States *ex rel*. Sherman v. Carter, 353 U.S. 210, 216–17 (1957).
[60] J.W. Bateson Co., Inc. v. United States *ex rel*. Board of Trustees of the Nat'l Automatic Sprinkler Indus. Pension Fund, 434 U.S. 586, 589 (1978) (*citing* F.D. Rich Co. v. United States *ex rel*. Indus. Lumber Co., 417 U.S. 116, 122 (1974)).
[61] United States *ex rel*. Capolino Sons, Inc. v. Elec. & Missile Facilities, Inc., 364 F.2d 705, 708 (2nd Cir. 1966) (cited with favor by F.D. Rich Co., Inc. v. United States *ex rel*. Indus. Lumber Co., Inc., 417 U.S. 116, 125 (1974)).
[62] United States *ex rel*. Sherman v. Carter, 353 U.S. 210, 216 (1957).

modified by a valid forum selection clause, provided the selected forum is not a state court.[63]
Plaintiff-Debtor argues that a valid forum selection clause in Plaintiff-Debtor's contract with
A&G overrides the Miller Act and sets venue for Count III in the Kansas District Court. The
section of the agreement on which Plaintiff-Debtor relies states:

> 9.9 OTHER DISPUTE PROCESSES If neither direct discussions nor mediation successfully resolve the dispute, the parties agree that the following shall be used to resolve the dispute.
>
> -Arbitration: Arbitration shall be pursuant to the construction industry rules of the American arbitration association, unless the parties mutually agree otherwise. A written demand for arbitration shall be filed with the American arbitration association and the other party to the agreement within a reasonable time after the dispute or claim has arisen, but in no event after the applicable statute of limitations for a legal or equitable proceeding has run. The arbitration award shall be final [sic] this agreement to arbitrate shall be governed by the federal arbitration act, and judgment upon the award may be confirmed in a court having jurisdiction.
>
> -Litigation Action may be filed in the appropriate state or federal court.[64]

A&G and GAIC contend that the foregoing does not constitute a valid forum selection clause since it does not specify a specific forum in which the action must or may be brought. Thus, the Court must determine whether the alleged forum selection clause is valid.

To interpret a contract, the Court "must give a written agreement that interpretation which was intended by the parties."[65] Courts refuse to enforce forum selection clauses that lack specificity in identifying an ascertainable forum.[66] Accordingly, the Tenth Circuit held that a contract provision stating that "an action *may be maintained* in the State of Kansas and the County of Wyandotte for the purpose of collecting . . . a deficiency" was not a forum selection

---

[63] United States *ex rel*. B&D Mech. Contractors, Inc. v. St. Paul Mercury Ins. Co., 70 F.3d 1115, 1117 (10th Cir. 1995) ("a valid forum selection clause supersedes the Miller Act's venue provision"); Deborah F. Buckman, *Construction and Application of Venue Provisions of Miller Act* (40 U.S.C.A. § 270(b)), 140 A.L.R. Fed. 615 (1997).
[64] Doc. 16-2, at 14 ¶ 9.9.
[65] Ader v. Hughes, 570 F.2d 303, 309 (10th Cir. 1978) (citations omitted).
[66] Conopco, Inc. v. PARS Ice Cream Co., Inc., 2013 WL 5549614, at *5 (S.D.N.Y. Sept. 26, 2013) (*citing* Cent. Ohio Graphics, Inc. v. Alco Capital Res., Inc. 221 Ga. App. 434, 472 S.E.2d 2 (Ga. Ct. App. 1996), and A.I. Credit Corp. v. Liebman, 791 F. Supp. 427, 429 (S.D.N.Y. 1992)).

clause because the word *may* "is not a word of exclusion . . . [and] does not confine the commencement of litigation to Wyandotte County."[67]

Here, the Court finds that the forum selection clause is impermissibly vague and overbroad and insufficient to supersede the Miller Act's specific venue provision. The alleged forum selection clause at issue does not even specify a forum. It lacks specificity because it provides no indication of the forum contemplated other than that of the United States as a whole. This does little to eliminate the uncertainties of where litigation may occur. If valid, the agreement's forum selection clause would permit litigation in any federal court in the country—even Puerto Rico. Enforcement of such a provision would be unreasonable and unjust. Instead of being a clause to select venue, the clause merely acknowledges that disputes may be resolved by litigation—in addition to arbitration. For claims under the Miller Act, the Act provides that the appropriate court is the federal district court in the district where the project which is the subject of the contract is located—the Western District of Virginia. This Court is therefore an improper venue under the Miller Act.

### VI. Transfer of The Adversary Proceeding To The United States District Court For The Western District of Virginia Is Proper

In its motion to dismiss, A&G asserts this Court "lacks the power to transfer the case to the federal district court for the Western District of Virginia under 28 U.S.C. § 1406."[68] A&G requests dismissal of the adversary proceeding without prejudice asserting that "[i]t will then be up to the Plaintiff International Electric, Inc. whether to re-file the complaint in the United States District Court for the Western District of Virginia."[69] GAIC agreed with this assertion by joining in A&G's motion to dismiss.[70] Plaintiff-Debtor notes that "A&G fails to cite any

---

[67] SBKC Serv. Corp. v. 1111 Prospect Partners, L.P., 105 F.3d 578, 580–82 (10th Cir. 1997) (emphasis in original).
[68] Doc. 16-1, at 8.
[69] *Id*.
[70] Doc. 19.

authority for the proposition that the Court lacks the ability to transfer the case to the appropriate venue" and requests that "in the event the Court determines venue is improper in this district, . . . that the Court transfer the case to the appropriate venue rather than dismissing."[71] During oral arguments on May 24, 2016, A&G and GAIC conceded that the adversary proceeding should be transferred to the United States District Court for the Western District of Virginia if the Court is not inclined to dismiss the instant action. Furthermore, all parties conceded that bifurcation of Counts I, II, and III amongst various courts in separate jurisdictions is not feasible.

Under 28 U.S.C. § 1406(a), the Court may serve the interests of justice by transferring a case laying venue in the wrong district. Bankruptcy Rule 7087 provides that "[o]n motion and after a hearing, the court may transfer an adversary proceeding or any part thereof to another district pursuant to 28 U.S.C. § 1412, except as provided in Rule 7019(2)."[72]

Here, transferring venue of a non-core claim under the Miller Act would not substantially interfere with Plaintiff-Debtor's ability to reorganize. Plaintiff-Debtor argues that the cost of litigation would frustrate its efforts to collect. However, a bankruptcy court may not retain an improperly venued case for the convenience of a party.[73] If venue is improper, 28 U.S.C. § 1406 applies,[74] stating that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."[75] "Thus, under section 1406(a) a district court has no discretion to retain a case in which venue is improper, but rather is required to dismiss or transfer the case."[76] "The majority of courts have held that, if venue is contested

---

[71] Doc. 20, at 6.
[72] FED. R. BANKR. P. 7087.
[73] U.S. Trustee v. Sorrells (*In re* Sorrells), 218 B.R. 580, 587 (B.A.P. 10th Cir. 1998) ("Since there is no bankruptcy-specific statute applicable to improperly venued cases, section 1406(a) must apply in bankruptcy, requiring such a case to be dismissed or, if it be in the interest of justice, transferred to a court in which venue is proper.").
[74] 218 B.R. at 587.
[75] 28 U.S.C. § 1406(a).
[76] 218 B.R. at 585.

and found to be improper, a bankruptcy court may not retain the case, but rather must dismiss it or transfer it pursuant to section 1406(a) and Bankruptcy Rule 1014(a)(2)."[77] Here, the interest of justice warrants transfer of Count III over dismissal because Plaintiff-Debtor may lose substantive legal rights if the Court dismisses the instant adversary proceeding. Further, the Court transfers Counts I and II with Count III in the interest of justice because all three counts are inextricably intertwined and should not be separately adjudicated. Therefore, the entire adversary proceeding is hereby transferred to the United States District Court for the Western District of Virginia where venue is proper.

## CONCLUSION

Counts I, II, and III of Plaintiff-Debtor's Complaint are transferred to the United States District Court for the Western District of Virginia because this Court lacks authority to enter a final judgment under Article III of the United States Constitution and venue is proper in the Western District of Virginia under the Miller Act. The Court abstains from adjudication of the parties' motions for summary judgment pursuant to this decision transferring the matter to the United States District Court for the Western District of Virginia.

**IT IS ORDERED** that Anthony & Gordon Construction Co., Inc., and Great American Insurance Company's motions to dismiss International Electric, Inc.'s Complaint are overruled.

**IT IS FURTHER ORDERED** that the instant adversary proceeding shall be and is hereby transferred to the United States District Court for the Western District of Virginia effective as of the date hereof.

**IT IS FURTHER ORDERED** that the Clerk of the United States Bankruptcy Court for the District of Kansas is authorized and directed to take all actions necessary to effectuate the

---

[77] *Id*. at 586.

transfer of the adversary proceeding to the United States District Court for the Western District of Virginia.

**IT IS SO ORDERED.**

###

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS